## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| ISLAND EYE CENTER, INC. dba ISLAND EYE AND RETINA CENTER,<br><br>Plaintiff,<br><br>vs.<br><br>PETER N. LOMBARD, M.D., ADVANCED EYECARE, LLC dba LOMBARD HEALTH, DESIREE NEDEDOG, JOHN and JANE DOES 1 through 20,<br><br>Defendants. | Civil Case No. CV0026-17<br><br>**DECISION AND ORDER** |

### INTRODUCTION

Defendant failed to produce documents Plaintiff requested, so Plaintiff now moves the Court to compel their production. This matter is before the Honorable Michael J. Bordallo. Island Eye Center, Inc. dba Island Eye and Retina Center ("Plaintiff" or "IEC") is represented by Daniel J. Berman, Esq. of Berman O'Connor & Mann. Peter N. Lombard, M.D., Advanced Eyecare, LLC dba Lombard Health, Desiree Nededog, John and Jane Does 1 through 20 ("Defendants" or if referring to Peter N. Lombard himself, "Lombard") are represented by attorney Delia Lujan Wolff of Lujan & Wolff, LLP. Having reviewed the arguments, the Court hereby **DENIES** Plaintiff's Motion to Compel.

## BACKGROUND

This matter arises out of Plaintiff's Motion to Compel Defendants to produce certain financial documents and contracts. Plaintiff filed the Motion to Compel ("Motion") on Nov. 6, 2018. Defendants filed an opposition ("Opposition") to the Motion on Dec. 14, 2018. Plaintiff filed a reply to the opposition on Dec. 28, 2018. This Court then took the matter under advisement.

## FACTS

1. On two separate occasions, Plaintiff requested from Defendants a total of 24 documents or document sets. Each was assigned a number 1 through 24. In the first request ("First Request"), Plaintiff requested Nos. 1-14. In the second request ("Second Request"), Plaintiff requested Nos. 15-24.

2. Plaintiff stated in the body of the Motion that Defendants have not produced Nos. 8, 15, 16, 17, 18, 19, and 21. Plaintiff stated in the conclusion of the Motion that Plaintiff is therefore entitled to an order compelling Defendants to produce the following documents:

   a. Lombard's Gross Receipt Tax Returns, Annual Tax Returns, K-1 Schedules, Form 1099's, balance sheets and December bank statements for years 2013, 2014, 2015, and 2016.

   b. All contracts of Lombard with all other doctors, including but not limited to, Dr. Marjorie DeBenedictus, and her Saint Lucy's Eye Clinic.

   c. Lombard's balance sheet disclosing owner's equity.

3. The documents in Nos. 8, 15, 16, 17, 18, 19, and 21 do not correspond exactly with the documents Plaintiff moves the Court to compel in the Motion's conclusion. For example, in the Motion's conclusion, Plaintiff moves the Court to order production of

1099 Forms, but this is the first time Plaintiff has requested them. The 1099 Forms do not appear in Nos. 1-24. Also, in the Motion's conclusion, Plaintiff moves to compel production of Lombard's balance sheet disclosing owner's equity. This request is also not found in Nos. 1-24, but it was requested for the first time in an email to Defendants on Aug. 11, 2018. Also, No. 8 requested contracts between other doctors and Lombard Health, but in the Motion's conclusion, Plaintiff moves to compel production of contracts between other doctors and Lombard the individual, not Lombard Health. Defendants later highlighted this distinction and argued that as a result, they should not have to produce contracts involving Lombard the individual.

4.  In terms of background, Defendant Lombard, an eye doctor, worked part-time moonlighting as a licensed ophthalmologist for Island Eye Center ("IEC" or "Plaintiff") starting on Aug. 9, 2010 and ending on Feb. 28, 2013, when his contract expired. Lombard stated in a declaration that although his contract ended on Feb. 28, 2013, he saw no patients and performed no services for IEC after May 12, 2012, and he received his last paycheck from IEC on Sep. 25, 2012.

5.  In 2015, Lombard opened his own clinic called Advanced Eyecare, having filed the paperwork to form it as a limited liability company on Jan. 31, 2013.

6.  On Jan. 17, 2017, IEC filed a complaint ("Complaint") against Lombard accusing him of poaching employees from IEC for his new clinic, breaching his contract with IEC, misappropriating trade secrets from IEC, and other related complaints.

7.  Two months later, Plaintiff made the First Request for discovery, Nos. 1-14, on Mar. 24, 2017. Two months after that, Plaintiff made the Second Request for discovery, Nos. 15-24, on May. 30, 2017.

8. The same day as the Second Request, Plaintiff emailed Defendants to acknowledge that although Defendants produced some of the 14 items in the First Request, they fell short in producing others. Plaintiff alerted Defendants that these failures would require a motion to compel, and Plaintiff requested a "meet and confer" to resolve the discovery disputes.

9. Three weeks later, on June 20, 2017, the parties met to confer about the First Request disputes.

10. Two days after the meeting, Plaintiff sent Defendants an email summarizing the meeting. The email said that in the June 20 meeting, Defendant agreed to produce more documents, and the parties clarified aspects of the discovery and discussed compromises.

11. A month later, on July 18, 2017, Plaintiff emailed Defendants to acknowledge that while Defendants produced some of the 10 items in the Second Request, they fell short in producing others. Plaintiff again alerted Defendants that these failures would require a motion to compel, and Plaintiff requested another meet and confer to resolve the disputes.

12. The parties met to confer on Aug. 3, 2017.

13. A week later on Aug. 11, 2017, Plaintiff sent Defendants an email ("Aug. 11 Email") summarizing the Aug. 3 meeting. In the Aug. 11 Email, Plaintiff accused Defendants of not properly responding to Nos. 15, 16, 17, 18, 19, and 20. In that list, it appears that Plaintiff intended to put No. 21 instead of No. 20, since elsewhere in the filings, the requests in question are consistently Nos. 15, 16, 17, 18, 19, and 21, always skipping No. 20.

14. The Aug. 11 Email stated that in the Aug. 3 meeting, Plaintiff suggested a compromise that would cure all or nearly all of its unanswered discovery requests. The compromise is that rather than require the documents in Nos. 15, 16, 17, 18, 19, and 21, Plaintiff would accept instead a summary of Defendants' Gross Receipts Tax ("GRT") for the period of Feb. 1, 2013 to Aug. 28, 2016.

15. Also in the Aug. 11 Email, Plaintiff made its first request for the balance sheet, apparently independent of the compromise offer.

16. On Sep. 14, 2017, the parties held a third meet and confer.

17. On Apr. 6, 2018, the parties held a fourth meet and confer.

18. That same day, Apr. 6, 2018, Plaintiff emailed Defendants a summary of the Apr. 6 meeting. The email states that the parties discussed discovery and scheduling matters, discussed depositions to be taken, and planned another meet and confer.

19. On Apr. 26, 2018, the parties held a fifth meet and confer, and Plaintiff emailed Defendants a summary of the meeting on Apr. 27, 2018 ("Apr. 27 Email"). In the email, Plaintiff suggested a compromise similar to the one in the Aug. 11 Email. The compromise is that Plaintiff would accept a summary and/or compilation of Defendants' GRTs from January 2013 through Aug. 28, 2016 in place of the documents in Nos. 8, 14, 15, 16, and 17. This compromise offer is slightly different from the one in the Aug. 11 Email, in which Plaintiff offered to accept a GRT summary in place of Nos. 15, 16, 17, 18, 19, and 21 (assuming Plaintiff meant No. 21, not No. 20).

20. The Apr. 27 Email also states that Plaintiff proposed a template for a Joint Stipulated Productive Order that would require Plaintiff to keep confidential any private or proprietary business information in Defendants' documents.

21. On May 7, 2018, Defendant informed Plaintiff via email ("May 7 Email") that it would agree to provide GRT summaries for Feb. 1, 2013 to Aug. 28, 2016 as long as Plaintiff produced GRT summaries for the same period and as long as Plaintiff agreed to a stipulated protective order to protect Defendants' information.

22. On Nov. 6, 2018, Plaintiff filed the instant Motion to Compel.

23. Later, on Nov. 27, 2018 the parties executed a joint stipulated protective order, and two days after that, the Court ordered it into effect. This protective order requires Plaintiff to protect Defendants' confidential and proprietary business information, provide the information only to certain specified individuals, use it only for purposes of this case, and other similar agreements.

24. Defendants stated that on Dec. 5, 2018, one month after Plaintiff filed the Motion to Compel, Plaintiff gave Defendants almost all of the GRT filings Defendants requested in the May 7 Email. In the Opposition, Defendant stated that those GRT filings and the stipulated protective order were sufficient for them to then be willing to give Plaintiff their GRT information. In the Aug. 11 Email and the Apr. 27 Email, Plaintiff had stated that Defendants' GRT summaries would satisfy most or all of its discovery requests. Defendant argues that this shows that Plaintiff could have resolved the discovery disputes without involving the Court.

25. Defendant also argues that Plaintiff can obtain its desired information through less intrusive means than through the documents Plaintiff moves to compel, especially considering that Plaintiff agreed to accept the GRT summaries instead of those documents.

26. Also, Defendants state that No. 8 refers to contracts involving Lombard Health, not Lombard the individual, so they argue that they shouldn't have to produce contracts with Lombard the individual.

27. In sum, it appears that Plaintiff has offered and is willing to accept Defendants' GRT summaries in place of the remaining unanswered requests. Plaintiff has given Defendants all or nearly all of the GRT summaries Defendants requested, and Defendants claimed to be satisfied. In turn, Defendants agreed to provide their GRT summaries to Plaintiff. Defendants have not yet done that, apparently awaiting the outcome of this Motion.

28. Meanwhile, Defendants argue that Plaintiff has violated Civil Rule 37.1 of the Local Rules of the Superior Court of Guam by not filing together with the Motion a written stipulation specifying separately and with particularity each issue that is still disputed. Defendants claim that Plaintiff never attempted to obtain a written stipulation about the disputed discovery items and did not demonstrate good cause for that omission. Plaintiff concedes that this is true but seeks to justify this omission as an acceptable response to Defendants' refusal to provide information after two formal requests and five meet and confers.

29. Plaintiff states multiple reasons that it needs the requested documents. For example, Plaintiff states that the documents will demonstrate the extent of Defendants' alleged misfeasance or malfeasance. The documents will also help Plaintiff determine damages related to both the alleged breach of contract and the alleged breach of other duties, such as the duty of loyalty, that Lombard owed to IEC during and after his employment there.

30. Plaintiff also states that it needs the information to counter Lombard's claim that he did not conduct business between January and March 2013. Plaintiff claims to have proof that Lombard worked for a Dr. DeBenedictus during those months.

31. Plaintiff also states that Defendants' tax returns are necessary to indicate Lombard's sources and amounts of income and the history of his side dealing. Plaintiff states that the sources of income will show how many other clinics and doctors he sold his services to in breach of his contract with IEC, while also revealing the degree to which he breached his duties owed to IEC.

32. Defendants claim that there are less intrusive means to obtain the information Plaintiff requests, but Plaintiff states that Defendants have never identified these less intrusive means.

33. This matter is now before the Court.

**ISSUE**

1. Whether to grant Plaintiff's Motion to Compel despite Plaintiff not having complied with CVR 37.1 of the Local Rules of the Superior Court of Guam.

**PRINCIPLES OF LAW**

The Guam Rules of Civil Procedure ("GRCP") state that parties may obtain discovery regarding any unprivileged matter that is relevant to the claim of any party, including documents, books, or other tangible things. Guam R. Civ. P. 26(b)(1). The GRCP also state that any party may serve on any other party a request to inspect and copy any tangible things which constitute or contain matters within the scope of Rule 26(b), and which are in the possession, custody, or control of the other party. Id. at 34(a)(1). If the other party receives the request but fails to respond, the discovering party may move for an order compelling production of the materials for inspection. Id. at 37(a)(2)(B). The motion must include certification that the

movant conferred or attempted in good faith to confer with the other party to try to obtain the materials without court action. Id. The local civil rules of the Superior Court of Guam ("CVR") add that before filing a motion to compel discovery, counsel for the parties must meet or attempt to meet in a good faith effort to eliminate the need for hearing the motion. Super. Ct. Guam R. 37.1(a). If they are unable to resolve the dispute, the respective counsels must create a written stipulation specifying "separately and with particularity each issue that remains to be determined at the hearing." Id.

Tax returns are discoverable only if they are relevant to the subject matter in dispute and the information sought is not obtainable from other sources. Haeuser v. Dep't of Law, Gov't of Guam, 1999 Guam 12 ¶ 27 (see also Terwilliger v. York Int'l. Corporation, 176 F.R.d. 214, 216-217 (W.D.Va. 1997).

## ANALYSIS

It appears that if Defendants would only give their GRT summaries to Plaintiff, Plaintiff would be satisfied. Defendants have stated they are ready and willing to do so. Plaintiff offered on two occasions to accept Defendants' GRT information in place of some or all of the originally requested documents. Defendants agreed to give their GRT summaries to Plaintiff only if Plaintiff in turn gave its GRT summaries for the same time period to Defendants and also signed a stipulated protection order. Plaintiff did both, and Defendants stated in the Opposition that they are satisfied with Plaintiff's actions. Apparently Defendants are ready to deliver their GRT summaries to Plaintiff but have paused to await the results of this Motion. It seems likely that if Plaintiff would have begun the exchange of GRT information first, the Motion may never have been necessary. Regardless, it is now the Defendants turn to give Plaintiff the requested GRT information in satisfaction of the documents still not produced in

response to Plaintiff's requests. If Defendants do so, this discovery dispute will apparently be put to rest.

Regarding tax returns, Defendants' tax returns are not discoverable unless they are relevant and unless the information in them cannot be obtained in any other way, under the Haeuser decision by the Supreme Court of Guam. The Court has some concerns about the relevance of the tax documents, considering that much of the information Plaintiff seeks, such as sources of income, will not appear in the tax documents. The Court has similar concerns about the balance sheet and other financial documents. Regardless, Plaintiff is presumably satisfied that the information could be obtained in another way because Plaintiff agreed to accept the GRT summaries in place of those documents. Therefore, Plaintiff's request for the tax returns fails the Haeuser test.

Plaintiff has largely followed the GRCP and CVR guidelines for requesting discovery. However, Defendants argue and Plaintiff concedes that Plaintiff has failed to comply with the final step of CVR 37.1. The rule states that prior to filing any motion relating to the discovery dispute, if the parties do not resolve the issues in a meet and confer, the respective counsels must create a written stipulation specifying separately and with particularity each issue that remains to be determined. Plaintiff filed the instant Motion without carrying out that step. This case appears to be a textbook example of the value of complying with CVR 37.1. It seems highly likely that if Plaintiff would have attempted to clarify each issue that remains to be determined, it would have recognized that the whole matter could be resolved if both parties simply carried out actions they had already agreed to do, that is, exchange GRT information and sign the protective order. Instead, Plaintiff filed the instant Motion, creating uncertainty for Defendants about how to proceed. Plaintiff's compliance with CVR 37.1 would likely have prevented the Court's involvement in this discovery dispute.

In addition, it is not clear to the Court exactly which documents Plaintiff is willing to stop seeking in exchange for Defendants' GRT summaries. Plaintiff's offers for compromise were similar but not identical, and as previously stated, Plaintiff moved to compel production of some materials that it had never previously requested. Still, given that both sides have agreed to compromises that will satisfy many if not all of the discovery requests, the Court is optimistic that the sides can resolve this discovery dispute. If they cannot, CVR 37.1 requires the parties to create a written stipulation specifying separately and with particularity each issue that remains to be determined at the hearing. The Court will await the outcome of these options, and meanwhile, the Court will not grant the Motion.

<strong>CONCLUSION AND ORDER</strong>

For the above reasons, the Court **DENIES** Plaintiff's Motion to Compel.

SO ORDERED, this _28_ day of _March_ 2019.

_____
HONORABLE MICHAEL J. BORDALLO
Judge, Superior Court of Guam

**SERVICE VIA COURT BOX**
I acknowledge that a copy of the original hereto was placed in the court box of:
_____
WOLFF
Date: 2/28/19 Time: 10:50am
Deputy Clerk, Superior Court of Guam